803 So.2d 450 (2001)
Sue WELLS, et ux., Plaintiffs-Appellants,
v.
KEMPER CASUALTY INSURANCE CO., et al., Defendants-Appellees.
Larry Carpenter, et al., Plaintiffs,
v.
Bobby G. Reed, et al., Defendants.
Nos. 35,304-CA, 35,305-CA.
Court of Appeal of Louisiana, Second Circuit.
December 28, 2001.
*451 Jeffrey L. Dement, West Monroe, Counsel for Appellants, Sue and Harry Wells.
Walter C. Dunn, Monroe, Counsel for Appellant, Allstate Insurance Company.
Diane S. Mitnik, New Orleans, Counsel for Appellee, Interstate Brands Corporation and Lumbermens Mutual Casualty Company.
Before NORRIS, WILLIAMS and KOSTELKA, JJ.
WILLIAMS, Judge.
The plaintiffs, Sue and Harry Wells, and defendant Allstate Insurance Company, appeal a judgment granting the motion for summary judgment of the defendants, Interstate Brands Corporation and Lumbermens Mutual Casualty Company.[1] For the following reasons, we reverse and remand.

FACTS
On October 15, 1999, a motor vehicle accident occurred in Monroe, Louisiana, involving Bobby Reed, who was driving a 1986 Chevrolet van owned by Interstate Brands Corporation ("Interstate") and Sue Wells, the driver of a 1991 Isuzu automobile. Riding as passengers in Wells' vehicle were Ruby Carpenter, Kali Smith and Rachel Caldwell. At the time of the accident, Reed was employed by Melvin Whitfield d/b/a Jack's Auto Body. On September 27, 1999, Interstate employee Pam Duffy had placed the company's van in the custody of Whitfield for repairs.
In his deposition, Whitfield testified that after making the repairs, he drove the van to Interstate's office to deliver the vehicle and collect payment. Whitfield stated that he was informed by Duffy that Interstate had not received the insurance funds and he was told to retain possession of the van until the repair payment was available. While the van was in Whitfield's custody, Reed drove the vehicle and was involved in the accident.
A short time after the accident, attorney Robert Foley interviewed Whitfield, who stated that he had driven Interstate's vehicle prior to the accident to do errands, that *452 Interstate was aware of his activity, that none of its employees had objected to his use and that he had given Reed permission to drive the van. However, contrary to his earlier statement, Whitfield testified in his deposition that he did not have permission from Interstate to use the vehicle and that he had not permitted Reed to drive the vehicle.
The plaintiffs, Harry and Sue Wells, filed a petition for damages against defendants, Interstate, its insurer Lumbermens Mutual Casualty Company ("Lumbermens"), Reed and Whitfield. A separate petition was filed by plaintiffs, Larry and Ruby Carpenter, Angie Smith, individually and as tutrix of Kali Smith and Sondra Carpenter, individually and as tutrix of Rachel Caldwell against defendants, Interstate, Lumbermens, Reed, Whitfield, Harry and Sue Wells and their insurer, Allstate Insurance Company ("Allstate"). The cases were consolidated for purposes of trial.[2]
Subsequently, Interstate and Lumbermens filed a motion for summary judgment on the ground that insurance coverage did not extend to Reed because he was not a permissive user of the vehicle. After a hearing, the district court rendered judgment granting the motion for summary judgment, dismissing the plaintiffs' claims against Interstate and Lumbermens. The Wells and Allstate appeal the judgment.

DISCUSSION
The appellants contend the district court erred in granting the defendants' motion for summary judgment. They argue that there remains a genuine issue of material fact concerning the issue of whether Reed received permission to drive Interstate's vehicle.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA-C.C.P. art. 966(C)(2).
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the mover is entitled to summary judgment. Article 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App. 2d Cir.8/21/96), 679 So.2d 477.
All motor vehicle liability insurance policies are required to include an omnibus clause which extends coverage to the person named therein and to any other person using such motor vehicle with the express or implied permission of the named insured. LSA-R.S. 32:900(B). Once permission, either express or implied, is granted by the insured to use the vehicle, *453 any subsequent changes in the character of the use do not require additional specific consent of the insured. Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398. Thereafter, coverage will be denied only if the deviation from permissive use amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle. Manzella, supra; Turner v. Alexander, 29,148 (La.App. 2d Cir.2/26/97), 690 So.2d 756.
The plaintiff has the burden of proving initial use with the express or implied permission of the insured to make coverage effective under the omnibus clause. Initial permission must be proved by a preponderance of the evidence. Manzella, supra; Turner, supra. Generally, implied permission arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. The omnibus clause must be interpreted broadly, with the goal of protecting the operator of the vehicle from liability, protecting persons injured by the operator and preventing collusion. Turner, supra.
In the present case, Whitfield testified in his deposition that Duffy dropped off the vehicle at his auto body shop for repair. Whitfield stated that he completed the repairs several days later, on a Saturday, and drove the van to Interstate's place of business the following Monday. Whitfield testified that Duffy told him to keep the van because the insurance check to pay for the repair had not arrived. He stated that he stored the vehicle in his shop at night, that it was moved in the mornings to make room for other vehicles and that the keys were left inside the van.
Whitfield stated that as far as he knew, neither he nor Reed were given permission to drive the van. However, Whitfield testified that he drove the van accompanied by Reed to Interstate for delivery to Duffy, but that she told him to keep the vehicle in his possession and he then drove the van back to his shop. Whitfield stated that at the time, Duffy did not complain about his having driven the vehicle.
In her affidavit, Pam Duffy testified that she was an employee of Interstate, which owned the 1986 Chevrolet vehicle involved in the accident. Duffy stated the conclusion that neither Whitfield nor Reed were given permission to drive the vehicle. However, Duffy did not state that she objected at the time to Whitfield's act of driving the van to attempt delivery. Nor did she deny telling him to take the vehicle back to his shop, knowing that he would be driving the van.
Defendants contend that Whitfield's denial that he received permission to drive the vehicle means that Reed could not have been a permissive user of the company's van. However, we note that Whitfield also testified that he had not driven any other customer's vehicle, but did drive Interstate's van following the repair. Thus, Whitfield's act could be interpreted as an indication that here, in contrast to prior occasions, he had received permission to drive defendant's van. Additionally, Duffy did not deny that Whitfield drove the van to Interstate without her objection or that she allowed him to drive the vehicle back to his shop.
Regarding the question of whether Reed was permitted to use the van, Whitfield testified in his deposition that he did not give Reed permission to drive the vehicle. However, Whitfield admitted that shortly after the accident occurred, he told an attorney that he had given Reed permission to use the van to pick up parts. Whitfield claimed that he was trying to "cover up" for Reed at the time, but his explanation for the purported falsehood was not very clear or particularly convincing.
*454 On a motion for summary judgment, the district court must ask not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff upon the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Two Feathers Enterprises, Inc. v. First Nat'l Bank of Commerce, 98-0465 (La.App. 4th Cir.10/14/98), 720 So.2d 398. Here, the plaintiffs presented evidence that Interstate's employee was aware that Whitfield had driven the defendant's vehicle to its office and not only failed to object, but allowed Whitfield to drive the van away and to retain possession of the vehicle for an extended period of time. Based upon this record, plaintiffs have produced sufficient evidence to raise a factual issue concerning whether the insured's acquiescence in Whitfield's use of the van on that occasion constitutes implied permission and whether under these circumstances it was reasonably foreseeable that Whitfield, as first permittee, would allow another person to drive the vehicle.
Plaintiffs have also shown that Whitfield made conflicting statements about whether he permitted Reed to use Interstate's vehicle. In order to resolve this issue, a trier of fact should hear the inconsistent statements and determine which is more credible in light of all the other surrounding circumstances. This determination will involve weighing the credibility of the witnesses and assessing the evidence. Summary judgment is not appropriate in situations involving issues of credibility. Smith v. Lynn, 32,093 (La.App. 2d Cir.8/18/99), 749 So.2d 692.
After reviewing the testimony, we must conclude that the defendants failed to satisfy their burden of demonstrating the absence of a genuine issue of material fact. Consequently, the district court erred in granting the motion for summary judgment. Accordingly, we shall reverse the judgment and remand this case for further proceedings.

CONCLUSION
For the foregoing reasons, the district court's judgment granting the motion for summary judgment is reversed as to the claims of the appellants, Harry and Sue Wells and Allstate. This case is remanded to the district court for further proceedings consistent with this opinion. Costs of this appeal are assessed to the appellees, Interstate Brands Corporation and Lumbermens Mutual Casualty Company.
REVERSED AND REMANDED.
NOTES
[1] In the two petitions for damages, Lumbermens Mutual Casualty Company was incorrectly referred to as Kemper Casualty Insurance Company.
[2] The record shows that plaintiffs, Larry and Ruby Carpenter, Angie Smith and Sondra Carpenter, did not obtain an order for appeal from the district court as required by LSA-C.C.P. art. 2121. Thus, the dismissal of their claims against the defendants is not before this court for review.